807 N.E.2d 793 (2004)
Bartlett A. WASHINGTON, Appellant-Defendant,
v.
STATE of Indiana, Appellee-Plaintiff.
No. 27A04-0305-CR-236.
Court of Appeals of Indiana.
May 7, 2004.
*794 Craig R. Persinger, Marion, IN, Attorney for Appellant.
Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
DARDEN, Judge.

STATEMENT OF THE CASE
Bartlett Washington appeals his conviction, after a jury trial, on one count of conspiracy to commit the offense of dealing in cocaine, as a class A felony.
We reverse and remand.

ISSUE
Whether sufficient evidence supports the conspiracy conviction.

FACTS
Steve Cummings was a man who had been addicted to crack cocaine for many years. In the fall of 2001, Cummings met Stan Owensby and purchased cocaine from him. Shortly thereafter, Cummings met Owensby's source: Marcus Nelson, "the main person that was the one that was holdin' all the ... cocaine." (Tr. 149). Cummings then began frequently buying cocaine from Nelson. Owensby would sometimes deliver the cocaine to Cummings; other times he would take Cummings to Nelson's house to make the purchase. Cummings met Washington at Nelson's house in the fall of 2001.
Between January and the end of April 2002, Cummings continued to purchase cocaine from Nelson and Owensby for his personal consumption, with Washington making at least one delivery. Cummings was spending about $300 weekly on cocaine.
In early May of 2002, Cummings decided that he wanted "to get [him]self offa drugs." (Tr. 174). Cummings contacted the Grant County Joint Effort Against Narcotics ("JEAN") Team Drug Task Force because he "figured if it would get it off the street [he] couldn't get to it." (Tr. 176).[1] Cummings gave the JEAN Team information about his cocaine purchases from Nelson, Owensby, and Washington.
Under supervision of the JEAN Team, Cummings proceeded to make a series of five cocaine purchases, each of which was preceded by his being strip-searched and given a certain amount of "buy money." *795 Cummings would then call Nelson to express his desire to purchase crack cocaine in that dollar amount.
On the first occasion, mid-afternoon of May 31, 2002 ("buy # 1"), Cummings called Nelson and ordered "$200 worth of rock cocaine and he said that he would have it delivered to my house." (Tr. 490). Shortly thereafter, Owensby arrived with rock cocaine, and Cummings gave him the $200. Cummins "told him [he] was gonna be throwin' a party around six o'clock" and might want more cocaine. (Tr. 494). Owensby drove away and was followed by Det. McBee (of the JEAN Team) to Nelson's house. There was no evidence of Washington's presence or involvement in buy # 1.
At about 6:00 p.m. on May 31st ("buy # 2"), the JEAN Team met with Cummings to prepare him for a second buy. Cummings called Nelson and asked for "$150 worth of rock and he said no problem, and then he said he'd be there in a few minutes and he hung up." (Tr. 507). Within the quarter hour, Washington arrived in front of Cummings' house. Washington "handed [Cummings] $150 worth of crack cocaine and [Cummings] handed him the" $150 in buy-money. (Tr. 509). Washington drove away, and Detective McBee followed him to Nelson's house.
On the afternoon of June 11, 2002 ("buy # 3"), Cummings again met with the JEAN Team for pre-buy preparation. He then called Nelson, told him he "had a hundred dollars" and "needed some rock cocaine and he said he'd be at [Cummings'] place in just a few minutes." (Tr. 518). Shortly thereafter, Nelson arrived, driving his red Ford Tempo and accompanied by his wife (who was known to Cummings). Cummings "handed him" $100; Nelson "counted it"; and Cummings took the "$100 worth of rock layin' on [Nelson's] left leg." (Tr. 522). Again, there was no evidence of Washington's presence or involvement in buy # 3.
Two days later, on the afternoon of June 13th ("buy # 4"), the JEAN Team prepared Cummings again. Cummings called Nelson and told him he wanted to buy "$100 worth of rock cocaine." (Tr. 530). Nelson said that "he'd be at [Cummings'] place in ten minutes." Id. Subsequently, Nelson "pulled up," and Cummings "gave him the hundred dollars." (Tr. 531). Nelson counted the money, laid "$100 worth of rock on his left leg and [Cummings] took it." (Tr. 532). Washington was not present at buy # 4 either.
Finally, on June 19th, ("buy # 5"), Cummings again met with the JEAN Team and prepared to make a cocaine buy. Cummings called Nelson, told him he wanted to buy rock cocaine, and within ten minutes Owensby arrived with cocaine, which Cummings purchased with "buy money." Washington was not present nor was there any evidence of his involvement in buy # 5.
After each of Cummings' buys, the substance was preliminarily determined to be cocaine. On July 18, 2002, a forensic chemist at the Indiana State Police Laboratory reported that buy # 1 was 1.04 grams of cocaine base; # 2 was .66 grams; # 3 was .65 grams; # 4 was .58 grams; and # 5 was .68 gramsfor a total or aggregate weight of 3.61 grams. On August 8, 2002, Washington was charged with conspiring with Nelson and Owensby to commit the offense of dealing in cocaine as a class B felony, and the State alleged a series of overt acts during May and June of 2002 in furtherance of the men's agreement. The State also charged that Washington committed the offense of dealing in cocaine, a class B felony, on May 31st. Subsequently, the State amended the original information and charged Washington with conspiracy to commit the offense of dealing in cocaine as a class A felony, *796 alleging that a series of overt acts during the first six months of 2002 evidenced the men's intent to deal in cocaine in an amount of 3 grams or more.
Washington was tried by a jury over the course of four days in March of 2003. The jury heard the foregoing evidence. The jury also heard the audiotapes of Cummings' sworn pre-buy and post-buy interviews with the JEAN Team, as well as some audiotapes of Cummings' calls to Nelson.[2] Various officers from the JEAN Team testified that in each of the five buys, Cummings was under constant surveillance. In addition, the jury heard that when the JEAN Team executed his arrest warrant, Washington was found "in front of Nelson's residence. (Tr. 544).
Finally, the jury heard testimony by Troy Ballard, drug chemist supervisor for the Indiana State Police Laboratory Division Drug Unit. Ballard testified that another chemist, whom he supervised, had originally tested the five substances obtained by Cummings and found them to be cocaine in a total amount of 3.61 grams. Ballard further testified that because this chemist was unavailable to testify at trial, he had personally retested the substances and confirmed that each was cocaine. Ballard testified that testing an alleged drug substance required that a sample be removed. Thus, after having been tested by the first chemist, the substances bought by Cummings would weigh less than at the time of the buys. The substances provided to Ballard for a second testing weighed a total of 2.61 grams, which was "very consistent with what would be removed for the original testing." (Tr. 246).
Washington moved for judgment on the evidence as to the conspiracy charge. The trial court denied the motion. Thereafter, the jury found Washington guilty of conspiracy to commit the offense of dealing in cocaine as a class A felony.[3]

DECISION[4]
Washington argues that his conviction for the offense of conspiracy to commit dealing in cocaine as a class A felony must be reversed on the basis of insufficient evidence. Specifically, he contends "there was no evidence other than mere association with the alleged co-conspirators in regard to the four controlled buys which Washington was not directly involved in, and which the State sought to aggregate in order to reach the threshold amount of three grams of cocaine." Washington's Br. at 2.[5] We agree.
The U.S. Constitution requires that the State prove beyond a reasonable doubt every fact necessary to constitute the crime. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Thus, the State must establish beyond a reasonable doubt "all elements of the offense charged." Dillon v. State, 257 Ind. 412, 275 N.E.2d 312, 315 (1971). In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences *797 favorable to the judgment and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Dunlap v. State, 761 N.E.2d 837, 839 (Ind.2002).
As the trial court instructed the jury, to convict Washington of conspiracy to commit dealing in cocaine as a class A felony, the State must have proven beyond a reasonable doubt the following three elements: (1) Washington agreed with Nelson and/or Owensby to commit dealing in cocaine in an amount of three grams of more, (2) with the intent to commit such dealing in cocaine, and (3) one of them performed an overt act in furtherance of the agreement. (App. 116-17, and see IND. CODE §§ 35-48-4-1, 35-41-5-2). It has long been the law that a conspiracy conviction may rest on circumstantial evidence alone, but "evidence of a mere relationship or association is not sufficient." Williams v. State, 274 Ind. 94, 409 N.E.2d 571, 573 (1980). The circumstantial evidence or conduct of the parties must be such that it supports the inference that there existed "an intelligent and deliberate agreement between the parties" to commit the charged felony offense. Frias v. State, 547 N.E.2d 809, 811 (Ind.1989), cert. denied 495 U.S. 921, 110 S.Ct. 1954, 109 L.Ed.2d 316.
There is uncontroverted evidence that Cummings called Nelson on May 31st and asked for $150 worth of crack cocaine and that within the quarter hour, Washington delivered $150 worth of crack cocaine to Cummings. The amount delivered was .66 grams. Thus, as Washington concedes, the evidence proves that he agreed with Nelson to commit dealing in cocaine in the amount of .66 grams.
However, we find no evidence indicating that Washington was party to an agreement concerning the other four controlled buys. We find untenable the proposition advanced by the State: that evidence Washington agreed to deal cocaine on one occasion leads to the inevitable and reasonable inference that he was party to an agreement to do so on the four other occasions. Further, there was no evidence presented as to any involvement by Washington in the four additional controlled buys of cocaine by Cummings, although testimony indicated that Nelson and Owensby were involved in those buys. Without evidence of his agreement or his involvement, and given the presumption of innocence with which Washington is clothed by our Constitution, we also find it untenable to use evidence of Nelson's and Owensby's overt acts in the other four buys to draw the inference that Washington was also part of the conspiracy to make those deals, i.e., that he conspired with them to deal in cocaine in an amount of 3 grams or more. Because we conclude that based upon the facts and circumstances in the record, no reasonable fact-finder could find the elements of conspiracy to commit dealing in cocaine as a class A felony offense to have been proven beyond a reasonable doubt, see Dunlap, 761 N.E.2d at 839, we order the class A felony conviction reversed and vacated.
In addition, we find it appropriate to remand for resentencing. The fact that Washington had also been convicted of an A felony could have affected the trial court's determination of the appropriate sentence to impose for the class B felony offense on which Washington was also convicted at trial. Accordingly, we remand for resentencing on that conviction.
Reversed, vacated, and remanded.
MAY, J., and BARNES, J., concur.
NOTES
[1] Cummings had no pending criminal charges at the time he contacted the JEAN Team.
[2] Efforts to record all of the calls were not successful.
[3] Washington was also found guilty of dealing in cocaine, a class B felony, based on his delivery of cocaine on May 31st. He raises no challenge to the conviction thereon.
[4] We heard oral argument on this case on April 21, 2004. We thank counsel for their able presentations.
[5] Because we find this contention to warrant reversal, we leave for another day Washington's argument that a conviction for conspiracy to commit dealing in cocaine as a class A felony should require "evidence beyond a reasonable doubt of a single delivery of cocaine in the amount of three grams or more." Washington's Br. at 5-6.