Aaron **REEMER**, Appellant–Defendant,

v.

**STATE of Indiana,** Appellee–Plaintiff.

No. 34A02–0406–CR–463.

Court of Appeals of Indiana.

Nov. 15, 2004.

Kathleen A. Young, Kokomo, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Aaron Reemer appeals his conviction for Possession of a Drug Precursor, as a Class

D felony, following a bench trial. Reemer raises two issues for our review, one of which we find dispositive: whether the State presented sufficient evidence to support his conviction.

We reverse.

### FACTS AND PROCEDURAL HISTORY

On October 14, 2003, Kurt Heibler, a loss prevention detective with Meijer, met with Kokomo Police Detective Bruce Rood to turn over the October 2, 2003, video surveillance tapes which showed Reemer purchasing boxes of nasal decongestant.[1] A few hours after that meeting, Reemer returned to the store with a companion, and the two men bought multiple boxes of nasal decongestant in separate transactions using the "U–Scan" checkout terminals. While they were completing the transaction, Daniel Majors, another store detective, and Jason Towne, Meijer's loss prevention team leader, waited in Towne's car for Reemer to exit the store. Heibler, who had followed Reemer out of Meijer and into the parking lot, then joined Majors and Towne. From Towne's vehicle, the three store employees observed Reemer enter a silver Grand Am. At that point, Heibler called Detective Rood and apprised him of the situation. Rood, in turn, contacted Captain Michael Holsapple to request that he aid in the investigation.

Benjamin Reemer, the driver of the Grand Am, Reemer, and Stephen Emery, the third occupant, eventually left the parking lot and pulled into the adjacent Meijer gas station, where one of the passengers exited the car and deposited

---

1. It is customary for Meijer employees to contact the Kokomo Police Department when a customer purchases suspicious amounts of a product commonly used to manufacture methamphetamine.

"something" in the trash receptacle. Transcript at 87. They then proceeded to pull onto Markland Avenue. Immediately thereafter, Holsapple inspected the trash can and retrieved its only contents: a receipt and several empty nasal decongestant boxes. Those product containers described the contents as pseudoephedrine hydrochloride.

Meanwhile, Rood followed the Grand Am as it turned onto U.S. 31 from Markland Avenue. Benjamin then pulled into another gas station, drove around the "gas pump island[s]," and finally stopped in front of one of them, "as if to get gasoline." Transcript at 88. When Holsapple arrived, he and Rood approached the Grand Am, identified themselves as police officers, and searched the vehicle. In it, they found twenty-four "blister packs" containing a total of 576 tablets.

The State charged Reemer with Conspiracy to Commit Dealing in Methamphetamine, as a Class B felony, and possession of a drug precursor. On January 9, 2004, Reemer waived his right to a jury trial, and the court held a bench trial on January 12, 2004. The next day, the court acquitted him of the conspiracy charge but found him guilty of possessing a drug precursor. Thereafter, the trial court entered judgment of conviction and sentenced Reemer accordingly. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

■ The Due Process Clause of the United States Constitution protects an accused against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *B.K.C. v. State*, 781 N.E.2d 1157, 1163 (Ind.Ct.App.2003) (quoting *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). Thus,

the State must establish beyond a reasonable doubt all elements of the offense charged. *Washington v. State*, 807 N.E.2d 793, 796 (Ind.Ct.App.2004) (quotations omitted). That doubt may arise from the evidence, the lack of evidence, or a conflict in the evidence. *Bunting v. State*, 731 N.E.2d 31, 35 (Ind.Ct.App.2000), *trans. denied*. In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Washington*, 807 N.E.2d at 796–97.

### Possession of a Drug Precursor

■ To convict Reemer of possession of a drug precursor, the State was required to prove that he (1) possessed, (2) more than ten grams, (3) of pseudoephedrine or its salts. *See* Ind.Code § 35–48–4–14.5(b). Here, the State produced evidence to show that Reemer possessed 17.28 grams of pseudoephedrine hydrochloride. Reemer contends that that evidence alone is insufficient to support his conviction because the State failed to prove every essential element of the crime of possession of a drug precursor. Specifically, he claims that the State did not establish that pseudoephedrine hydrochloride is a salt of pseudoephedrine and, thus, did not prove the third element of the offense.

■ It is a well-settled principle of criminal law that a conviction will be reversed as a matter of law if the State fails to prove an essential element of the crime. *Dolkey v. State*, 750 N.E.2d 460, 462 (Ind. Ct.App.2001) (quoting *Barnett v. State*, 579 N.E.2d 84, 86 (Ind.Ct.App.1991), *trans. denied*). With respect to offenses involving controlled substances, the State must

prove, as an essential element, that the proscribed drug falls within the applicable statutory provision. *Id.* If a drug is identified in court by a name specifically designated as a controlled substance by the Indiana Code, then the State has proven as a matter of law that the drug is a controlled substance. *Id.* But if the substance is not specifically enumerated by the Code as a controlled substance, the State must offer extrinsic evidence to prove that the substance falls within the Code's definition. *Id.*

The facts of this case are nearly identical to the facts in *Dolkey. See Dolkey,* 750 N.E.2d at 460.[2] There, the State charged the defendant with possession of two or more chemical reagents or precursors with the intent to manufacture methamphetamine. *See id.* at 461. At trial, the State proved that Dolkey purchased pseudoephedrine tablets and rubbing alcohol. However, Indiana Code Section 35-48-4-14.5 does not designate rubbing alcohol as a chemical reagent or precursor.[3] And while the State presented evidence regarding the use of rubbing alcohol in the methamphetamine manufacturing process, it did not offer extrinsic evidence to prove that rubbing alcohol was, in fact, an "organic solvent" under the statute. *See id.* at 462–63. Thus, we held that the State failed to prove an essential element of the crime and reversed Dolkey's conviction on sufficiency grounds.

In this case, Officer Bilkey testified that "pseudoephedrine is literally the building block" for methamphetamine and that "the most common ... source of [ ] pseudoephedrine is the over-the-counter cold medication." Transcript at 142–43. Relying on the information listed on the empty product containers Officer Rood collected from the Grand Am, Bilkey then identified the tablets as over-the-counter cold medication. The boxes, however, describe the contents as "pseudoephedrine hydrochloride," a compound which Indiana Code Section 35-48-4-14.5 does not specifically designate as a precursor. And, as in *Dolkey,* the State offered no evidence to prove that the substance at issue falls within that statute's definition of a precursor. In other words, the State presented no extrinsic evidence to show that pseudoephedrine hydrochloride is, in fact, pseudoephedrine or a salt of pseudoephedrine. Without that evidence, the State failed to prove an essential element of the crime, and, therefore, did not meet its burden of proving beyond a reasonable doubt that Reemer committed the crime charged.

▬▬ Still, the State baldly asserts that "[p]seudoephedrine hydrochloride is a salt of pseudoephedrine." Brief of Appellee at 4, 7. But it does not offer *any* authority to substantiate that claim. In any event, the State's belated attempt to bridge this evidentiary gap must fail. "It is axiomatic that appellate review of the factfinder's assessment is limited to those matters contained in the record which were presented to and considered by the factfinder. On appeal, judicial notice may not be used to fill evidentiary gaps." *Dolkey,* 750 N.E.2d at 462.[4] We cannot take

---

**2.** Despite the obvious factual and legal similarities between the two cases, neither Reemer nor the State discusses *Dolkey* in their briefs.

**3.** Subsection (a) of that statute lists eighteen different substances which the legislature has labeled "chemical reagents or precursors." Pseudoephedrine, the salts of pseudoephed-

rine, and organic solvents appear on that list; rubbing alcohol and pseudoephedrine hydrochloride do not.

**4.** "Moreover, judicial notice, as a general rule, is restricted to matters of common public knowledge, ... a description that does not apply to the chemistry of drugs...." *White v.*

judicial notice on appeal whether pseudoephedrine hydrochloride is a salt of pseudoephedrine. *See* Ind. Evidence Rule 201(a).[5]

In sum, the State failed to prove that pseudoephedrine hydrochloride is a salt of pseudoephedrine and, thus, failed to prove an essential element of the offense. We are, therefore, compelled to reverse Reemer's conviction for insufficient evidence, and Reemer may not be retried on this charge. *See Cockrell v. State,* 743 N.E.2d 799, 803 (Ind.Ct.App.2001) ("When a conviction is reversed due to insufficient evidence, double jeopardy precludes retrial of the overturned conviction.").[6]

Reversed.

*State,* 161 Ind.App. 568, 316 N.E.2d 699, 704 (1974) (citations omitted).

5. The State relies on *State v. Halsten,* 108 Wash.App. 759, 33 P.3d 751 (2001), as support for the proposition that pseudoephedrine hydrochloride is a salt of pseudoephedrine, but its reliance on that case is misplaced for two reasons. First, in *Halsten,* the State produced expert testimony on that issue whereas, in this case, the State neglected to produce *any* evidence at trial that pseudoephedrine hydrochloride is a salt of pseudoephedrine. Second, the State attempts to import evidence from *Halsten* as a substitute for meeting its

evidentiary burden in this case, but it ignores a fundamental premise of our judicial system, namely, the requirement that the State establish beyond a reasonable doubt all elements of the offense charged in every case it prosecutes. *See Winship,* 397 U.S. at 364, 90 S.Ct. 1068. There is a material difference between precedent and proof.

6. Because we have reversed Reemer's conviction on sufficiency grounds, we need not address his argument that the labels on the empty nasal decongestant boxes identifying the contents as "pseudoephedrine hydrochloride" constitute inadmissible hearsay.