**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 10 2014, 9:02 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DONALD E.C. LEICHT**
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CHARLES THOMPSON,      )
     )
     Appellant-Defendant,      )
     )
     vs.      )    No. 34A05-1211-CR-578
     )
STATE OF INDIANA,      )
     )
     Appellee-Plaintiff.      )

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable Brant Parry, Judge
Cause No. 34D02-1207-FA-165

**February 10, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Charles Thompson appeals his convictions for dealing in methamphetamine as a Class A felony, and two counts of possession of a controlled substance as Class D felonies. Thompson raises two issues on appeal: 1) whether the trial court erred in entering judgment of conviction on the charge of dealing in methamphetamine; and 2) whether the trial court abused its discretion in the admission of evidence. Concluding that the trial court did not err or abuse its discretion, we affirm.

## Facts and Procedural History

In April 2011 Officer Chad VanCamp with the Kokomo Police Department Drug Task Force went to Thompson's residence to serve an arrest warrant for Thompson. Officer VanCamp saw a woman, Holly Patton, in Thompson's driveway and asked her if Jim Smith was inside the house. She answered that he and Thompson were inside, and she went into the house, opening the front door just wide enough to squeeze through. When the door opened, Officer VanCamp detected a strong odor that he associated with the manufacturing of methamphetamine, having previously investigated more than one hundred methamphetamine labs. When Patton, Thompson, and Smith exited the house, VanCamp arrested all three of them.

As Patton, Thompson, and Smith were exiting the house, Detective Shane Melton arrived on the scene and also noticed odors that he associated with methamphetamine labs. Detective Melton then requested and obtained a search warrant. Execution of the warrant revealed methamphetamine, an oxycodone pill, and an unopened fentanyl patch, inside a box stuffed into Thompson's couch.

The State charged Thompson with count I, dealing in methamphetamine as a Class A felony; count II, possession of a controlled substance (fentanyl) as a Class D felony; and count III, possession of a controlled substance (oxycodone) as a Class D felony. The State subsequently filed an information for count IA, possession of methamphetamine as a Class C felony. Thompson was found guilty of all counts following a jury trial, and judgment of conviction was entered on all four charges. At sentencing, the court merged count IA into count I and sentenced Thompson to forty years with thirty-five years executed on count I, and three years executed for each of counts II and III, with all sentences to be run concurrently. This appeal followed.

## Discussion and Decision

### I. Judgment of Conviction

Thompson first argues that the trial court erred in entering judgment of conviction on count I because the State had filed an information for count IA, which Thompson contends should have replaced count I. Thompson concedes that possession of methamphetamine is a lesser included offense of dealing in methamphetamine but argues that because the second information is titled as an "amended" information, it was intended to replace count I. However, nowhere in the chronological case summary or on the information itself do we see the word "amended." Thompson does not argue that the later information was intended to entirely replace the original information and all three counts therein, but rather that it was intended to replace only count I.

The record, however, indicates that count IA was always treated as an additional charge. The court instructed the jury on each of the four counts (I, IA, II, III), and that Thompson was charged with four crimes. The jury also received guilty/not guilty forms

3

for each of the four charges. Thompson admits that he did not object when the court treated the second information as an addition to—rather than a replacement of—the original count I. The failure to raise an issue at trial waives the issue on appeal. Wilson v. State, 931 N.E.2d 914, 919 (Ind. Ct. App. 2010), trans. denied.

While perhaps the more clear practice would have been for the State to file the second information as count IV rather than count IA, we see no indication in the information itself or in the behavior of either party at trial that indicates the second information was intended as anything but an addition to the original information. Rather, it seems that count IA was intended and treated as being an additional, fourth charge against Thompson—a lesser included offense of the dealing charge. The State notes that this is a common backup charging plan such that if the jury failed to find that Thompson had necessary mens rea to support a dealing charge, it could still find Thompson guilty of possessing the methamphetamine found at his house. The trial court did not err in entering judgment of conviction for Thompson on the dealing in methamphetamine charge.

## II. Admission of Evidence

### A. Arrest Warrant

Thompson also argues that the arrest warrant was improper because it was not supported by probable cause. Thompson argues that therefore everything stemming from the arrest warrant—including the subsequent search warrant and fruits of that search—is inadmissible.

A valid arrest warrant must be supported by probable cause. U.S. Const. amend. IV. "Probable cause turns on a 'practical, common-sense decision whether, given all the

4

circumstances set forth in the affidavit . . . there is a fair probability' that the subject has committed a crime or evidence of a crime will be found." Shotts v. State, 925 N.E.2d 719, 723 (Ind. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). To establish probable cause, an affidavit in support of the warrant must do more than state the conclusion of the affiant, and a neutral and detached magistrate must draw his or her own conclusion as to whether probable cause exists. Id. A reviewing court gives substantial deference to the magistrate's decision and must focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. Id. In reviewing the execution of an arrest warrant, the focus is on a reasonable belief as to the residence and presence of the subject. Duran v. State, 930 N.E.2d 10, 18 (Ind. 2010). "Similarly, the reasonableness of an entry into a home to execute an arrest warrant requires a reasonable belief that there is a valid warrant, a reasonable belief that the residence is that of the suspect, and a reasonable belief that the suspect will be found in the home." Id.

The original arrest warrant was for dealing in methamphetamine, robbery, and intimidation. Two items were offered in support of the arrest warrant: a probable cause affidavit from December 2010, affirmed under penalty of perjury and signed by Detective Melton; and a police department supplementary report from April 2011, also signed by Detective Melton, but not affirmed under oath.

The affidavit recounts a controlled buy in which a confidential informant met with Thompson at Thompson's residence and exchanged money for a white powder represented to be methamphetamine. Shortly after the buy, the informant turned the powder over to Detective Melton, who field tested it for methamphetamine and found it

5

to be positive. Detective Melton notes that the informant was searched both shortly before and shortly after the transaction, and his vehicle was searched as well. No illegal drugs or contraband were found during the searches. Detective Melton also stated that he and/or fellow detectives maintained audio and/or visual surveillance on the informant while the informant was meeting with Thompson.

The supplementary report recounts an attempted second controlled buy between the same confidential informant and Thompson. The informant was again searched prior to the buy, with no illegal drugs or contraband found. The informant was set up with surveillance equipment and went to Thompson's house. Once inside Thompson's house, the informant was confronted by Thompson and was beaten, kicked, and bitten by Thompson and a second person. At some point during the altercation, the money that the informant had brought for the buy was taken from him. Thompson threatened the informant by saying, "Do you want me to put a bullet in your head?" Defendant's Exhibit A. The informant was able to exit the residence, and Detective Melton took photographs of his injuries. Detective Melton noted that the informant's face was swollen and one eye was beginning to turn black, and the informant reported that he was in pain. The report also notes that the informant indicated that he was afraid he was going to die during the attack.

We conclude that there was a sufficient basis presented from which a magistrate could make reasonable inferences supporting a determination that there was probable cause to believe that Thompson had committed the alleged crimes. Moreover, we note that Officer VanCamp did not enter Thompson's house to execute the warrant, and that

6

there is no suggestion that he was acting on other than a reasonable belief that there was a valid arrest warrant.

When Detective Melton requested a search warrant for Thompson's residence, after his arrest, that request was accompanied by a probable cause affidavit which Detective Melton affirmed under penalty of perjury. The affidavit noted the two controlled buys with a "confidential reliable informant"; Detective Melton's knowledge of Jimmy Smith as a methamphetamine and prescription drug user and assistant in methamphetamine manufacture; the strong chemical odor associated with manufacturing methamphetamine that was coming from Thompson's house, smelled by both Detective Melton and Officer VanCamp; and the inconsistent stories that Thompson and Smith told when asked to explain the smell. State's Exhibit 1. We conclude that this was a sufficient basis to support a determination that probable cause existed for the search warrant.

When ruling on the admissibility of evidence, the trial court is afforded broad discretion, and we will only reverse the ruling upon a showing of abuse of discretion. Gibson v. State, 733 N.E.2d 945, 951 (Ind. Ct. App. 2000). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. Id. We consider the evidence most favorable to the trial court's ruling and any uncontradicted evidence to the contrary to determine whether there is sufficient evidence to support the ruling. Id.

Concluding that there was probable cause to support both the arrest and search warrants, we disagree that it was improper to admit evidence recovered during the search

7

of Thompson's home. The trial court did not abuse its discretion in admitting evidence retrieved during the search of Thompson's home.

## B. Fentanyl Patch

In addition to the challenge based on the arrest warrant, Thompson also, briefly, challenges the admission or sufficiency of the unopened fentanyl patch because it was not tested by a lab to confirm its contents.

However, the State correctly notes that our supreme court has held that the contents of unbroken and manufacturer-sealed packaging can be established by the label on that package, without needing to test the contents of the package. Reemer v. State, 835 N.E.2d 1005, 1009 (Ind. 2005) ("The fact that the tablets were in the original unbroken blister packs is sufficient to establish that the contents remained as the manufacturer packaged them. The labels clearly listed pseudoephedrine hydrochloride as one of the active ingredients in each tablet. The trial court properly admitted the nasal decongestant labels into evidence as proof of the contents, and therefore the blister packs in Reemer's possession contained pseudoephedrine hydrochloride."). We conclude that the trial court did not abuse its discretion in admitting the fentanyl patch into evidence to prove possession without any further testing.

## Conclusion

Concluding that the trial court did not err in entering judgment of conviction on the dealing in methamphetamine count, and did not abuse its discretion in admission of any of the evidence, we affirm.

Affirmed.

BARNES, J., and BROWN, J., concur.

8