## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Deborah K. Smith
Sugar Creek Law
Thorntown, Indiana

ATTORNEYS FOR APPELLEES

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John W. Schocke,
*Appellant/Defendant,*

v.

State of Indiana,
*Appellee/Plaintiff.*

April 1, 2020

Court of Appeals Case No.
19A-CR-2086

Appeal from the Boone Superior Court

The Hon. Bruce E. Petit, Judge

Trial Court Cause No.
06D02-1904-F2-847

**Bradford, Chief Judge.**

# Case Summary

In February of 2019, John Schocke agreed with Casey Jones to travel from Boone County to Georgia to buy methamphetamine for Schocke to resell in Indiana. To that end, Schocke, Casey, Kierra McClaine, and Brandy Kirby drove to Georgia in a car rented by Casey's wife and returned to Indiana with the methamphetamine. Although Casey was arrested on an outstanding warrant soon after the four returned to Indiana, Schocke completed several sales before McClaine commandeered the rental car at a rest stop and returned to Lebanon alone, removing the remaining methamphetamine from the rental car and hiding it in her house. Before Casey's wife and McClaine could clean up the rental car, Schocke and Kirby arrived back in Lebanon looking for the methamphetamine and confronted McClaine at her house. Kirby restrained McClaine at Schocke's direction and beat her while the shotgun-wielding Schocke put the shotgun against McClaine's head at one point.

Schocke was eventually convicted of Level 2 felony conspiracy to commit dealing in methamphetamine and Level 3 felony criminal confinement and found to be a habitual offender. The trial court sentenced Schocke to an aggregate term of forty years of incarceration. Schocke contends that the State produced insufficient evidence to sustain his convictions for conspiracy to commit dealing in methamphetamine and criminal confinement. Because we disagree, we affirm.

# Facts and Procedural History

[3] By February of 2019, husband and wife Casey and Ashley Jones had become estranged, Casey had relapsed on methamphetamine, and Casey had begun a sexual relationship with McClaine. On or around February 16, 2019, Casey recruited McClaine to accompany him to Georgia to purchase methamphetamine for resale in Indiana. Before Casey and McClaine left Boone County, they picked up Kirby and Schocke in a car rented by Ashley. Casey and Schocke had previously discussed the trip, and they "had an agreement to go pick up this meth and then to sell it." Tr. Vol. III p. 32. Casey planned on giving the methamphetamine to Schocke, who had told Casey he could resell it in southern Indiana.

[4] Upon arrival in Georgia at approximately 10:00 p.m. the next day, Casey and Schocke left their hotel room to purchase approximately eighteen ounces of methamphetamine, returned to the hotel, and put the methamphetamine into a duffel bag in the trunk of their rental car, whereupon the group set off for Indiana. Soon after arriving in Jeffersonville on the morning of February 18, 2019, the rental car was stopped by police at a road closure caused by flooding, and the police determined that Casey had an outstanding warrant. Before being arrested, Casey told Schocke to take the duffel bag and that "he [knew] what to do with the rest of the stuff." Tr. Vol. II p. 170.

[5] On the way back to Boone County, Schocke and Kirby left McClaine at a shopping mall in Bartholomew County, saying that he had to "run to friends' houses[.]" Tr. Vol. II p. 170. After picking McClaine up from the mall approximately two hours later, the three stopped at five more houses; at each

stop, Schocke retrieved the duffel bag from the trunk, took it into the house, and returned with it. Each visit took approximately fifteen to thirty minutes. Although Schocke and Kirby had decided to abandon the rental car in Southport, McClaine was afraid of going to jail for auto theft, so, when Schocke and Kirby exited the rental car at a rest stop, McClaine commandeered it and drove back to Lebanon alone. When McClaine arrived back in Lebanon that evening, she went to her house, took the duffel bag inside, and hid it. McClaine drove the rental car to Ashley's home to return it, and then Ashley drove McClaine back to her house so that McClaine could change clothes and they could clean out the rental car.

[6]     After being inside for a while, McClaine and Ashley went outside to find Kirby searching the trunk of the rental car. Kirby charged McClaine and "started beating [her] a[**]." Tr. Vol. II p. 178. McClaine managed to get away and make her way inside to a bathroom, and she managed to call 911 before emerging and walking to the attached garage. As she walked into the garage, McClaine encountered Kirby and Schocke, who had also arrived and was armed with a shotgun. Schocke told Kirby, "get her, I'm gonna blow her head off" and "don't let her go." Tr. Vol. II pp. 179, 186. Kirby pulled McClaine into the garage, grabbed her by the hair, and began beating her again. While Kirby was restraining McClaine at Schocke's direction, Schocke drew closer, at one point holding the shotgun to McClaine's head. Schocke and Kirby fled when police arrived. While McClaine was in the garage, she did not think that she could leave, in part due to the presence of the shotgun.

On April 25, 2019, the State charged Schocke with Level 2 felony conspiracy to commit dealing in methamphetamine, Level 3 felony conspiracy to commit possession of methamphetamine, Level 3 felony criminal confinement, and Level 4 felony unlawful possession of a firearm by a serious violent felon ("SVF") and alleged that he was a habitual offender. On June 20, 2019, a jury found Schocke guilty as charged. On August 13, 2019, the trial court merged Schocke's two conspiracy convictions, vacated the SVF conviction, and sentenced him to an aggregate term of forty years of incarceration.

# Discussion and Decision

Schocke contends that the State produced insufficient evidence to sustain his convictions for Level 2 felony conspiracy to commit dealing in methamphetamine and Level 3 felony criminal confinement. When a defendant challenges the sufficiency of the evidence used to convict him of a crime, we consider only the probative evidence and reasonable inferences arising therefrom supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm a conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Young v. State*, 973 N.E.2d 1225, 1226 (Ind. Ct. App. 2012). Put another way, reversal of a conviction "is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense." *Purvis v. State*, 87 N.E.3d 1119, 1124 (Ind. Ct. App. 2017), *aff'd on reh'g*, 96 N.E.3d 123 (Ind. Ct. App. 2018). This standard of review does not permit us to reweigh the evidence or allow us to judge the credibility of the witnesses. *McCallister v.*

*State*, 91 N.E.3d 554, 558 (Ind. 2018). In cases where there is conflicting evidence in the record, we consider the evidence in the light most favorable to the trial court's judgment. *Drane*, 867 N.E.2d at 146.

## I. Conspiracy to Commit Dealing in Methamphetamine

[9] Indiana Code section 35-41-5-2 provides, in part, as follows:

> (a) A person conspires to commit a felony when, with intent to commit the felony, the person agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same level as the underlying felony.
>
> [….]
>
> (b) The state must allege and prove that either the person or the person with whom he or she agreed performed an overt act in furtherance of the agreement.

The underlying felony Schocke was convicted of conspiring to commit was Level 2 dealing in methamphetamine. Pursuant to Indiana Code section 35-48-4-1.1, a person who knowingly or intentionally delivers or finances the delivery of, or possesses with intent to deliver or finance the delivery of, methamphetamine commits dealing in methamphetamine, a Level 2 felony if the amount involved is at least ten grams. While it is undisputed that the amount of methamphetamine involved here was greater than ten grams, Schocke argues that the State failed to establish that he had an agreement with Casey to deal methamphetamine or that he participated in an overt act in furtherance of such an agreement.

[10] As for the existence of an agreement, Casey explicitly testified that he had agreed ahead of time with Schocke that he was going to give the

methamphetamine acquired on the trip to Georgia to Schocke for resale because Schocke had told him that he could resell it in southern Indiana. Moreover, when Casey was arrested in Jeffersonville, the State produced testimony from McClaine that Casey told Schocke to take the duffel bag and that he knew what to do with the "rest of the stuff." Tr. Vol. II p. 170. The evidence regarding Schocke's actions afterwards is also entirely consistent with the existence of a prior agreement, as McClaine testified that Schocke proceeded to stop at several houses in southern Indiana, taking the duffel bag into each and then returning. Schocke's argument is essentially that Casey should not have been believed by the jury, as it was in his interest to deflect blame to Schocke. Not only does this argument ignore McClaine's testimony regarding the exchange before Casey's arrest, it amounts to nothing more than an invitation to reweigh the evidence, which we will not do. *McCallister*, 91 N.E.3d at 558.

[11] The record also contains ample evidence of overt actions taken by Schocke in furtherance of the conspiracy. The record contains evidence that Schocke travelled with Casey to Georgia, went with him to acquire the methamphetamine, and then actually dealt methamphetamine to several customers upon his return to Indiana. Any of these acts easily satisfy the statutory requirement of proof that an overt act was taken in furtherance of the conspiracy. Again, Schocke is asking us to reweigh the evidence, which we will not do. *Id.*

[12]     Schocke draws our attention to *Washington v. State*, 807 N.E.2d 793 (Ind. Ct. App. 2004), a case in which we reversed a conviction for conspiracy to commit Class A felony dealing in cocaine. *Id*. at 797. *Washington*, however, does not help Schocke. In that case, the issue was whether Washington had specifically agreed to deal over three grams of cocaine (an amount required to support his Class A felony conviction), and we concluded that the record only supported the conclusion that he had agreed to deal 0.66 grams. *Id*. Here, the amount of methamphetamine involved is not disputed (at approximately eighteen ounces), and, as mentioned, Schocke disputes only the existence of an agreement or an overt act, items that were not at issue in *Washington*. *Washington* simply does not apply here.

[13]     Schocke also cites to *Kats v. State*, 559 N.E.2d 348 (Ind. Ct. App. 1990), *trans. denied*, for the proposition that mere association with Casey is insufficient to establish a conspiracy. *Id*. at 352. While this is true, there is, as mentioned, ample evidence in the record beyond Schocke's mere presence to establish that he and Casey had an agreement to deal methamphetamine.

[14]     Finally, Schocke argues that there is no evidence that he ever actually possessed or dealt methamphetamine in Boone County. Even if this is true, it does not help him, as he does not claim that the *agreement* was not formed in Boone County. "In a prosecution for conspiracy to commit a felony, any or all offenders may be tried in the county in which […] *the agreement was made*[] or […] any overt act in furtherance of the agreement is performed." Ind. Code § 35-32-2-4(b) (emphasis added). In any event, to the extent that Schocke's claim

is a challenge to venue, he failed to raise it below and has therefore waived it for appellate consideration. *See, e.g.*, *Reynolds v. State*, 254 Ind. 478, 481, 260 N.E.2d 793, 795 (1970) ("It is well settled that the question as to which of two courts of general jurisdiction should try a crime does not involve the jurisdiction of the subject matter, but only the place of trial. It is a question of venue and it may be waived by the defendant."). Schocke has failed to establish that the State produced insufficient evidence to sustain his conviction for Level 2 felony conspiracy to commit dealing in methamphetamine.

## II.  Criminal Confinement

Schocke also contends that the State failed to produce evidence sufficient to sustain his conviction for Level 3 felony criminal confinement. Indiana Code section 35-42-3-3 provides, in part, that "[a] person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement[,] a Level 3 felony if it […] is committed while armed with a deadly weapon[.]" "The offense of confinement requires proof of a substantial interference with a person's liberty without the person's consent." *Cunningham v. State*, 870 N.E.2d 552, 553 (Ind. Ct. App. 2007) (citation omitted).

Schocke's argument is essentially that the evidence establishes, at most, that Kirby confined McClaine because (1) she was the one physically restraining her and (2) there is conflicting evidence regarding whether Schocke pointed the shotgun at McClaine's head. We find this argument unpersuasive. First, McClaine testified that Kirby restrained her at Schocke's direction. Even if we

assume that this direction was Schocke's only involvement, it is still sufficient to sustain his conviction:

> It is well established that a person can be charged as a principal and convicted as an accomplice. The accomplice liability statute does not set forth a separate crime, but merely provides a separate basis of liability for the crime that is charged. The individual who aids another person in committing a crime is as guilty as the actual perpetrator. In other words, a defendant may be convicted as a principal upon evidence that he aided or abetted in the perpetration of the charged crime. The accomplice need not participate in each and every element of the crime in order to be convicted of it.

*Specht v. State*, 838 N.E.2d 1081, 1092–93 (Ind. Ct. App. 2005) (cleaned up), *trans. denied*.

[17] As for Schocke's observation that there is conflicting evidence that he actually held the shotgun to McClaine's head, he offers no authority for the proposition that a firearm must be held to a victim's head, or even pointed at the victim, in order for a criminal confinement to occur, and, indeed, the relevant statute only requires that the defendant be "armed with a deadly weapon[.]" Ind. Code § 35-42-3-3. In any event, McClaine specifically testified that Schocke held the shotgun to her head, so again Schocke is asking us to reweigh the evidence, which we will not do. *McCallister*, 91 N.E.3d at 558.

[18] Schocke relies on *Cunningham*, 870 N.E.2d at 552, in which we reversed Cunningham's conviction for criminal confinement because the victim did not testify that she had felt confined during a battery and there was no direct evidence of confinement beyond a battering. *Id*. at 554. However, Schocke's

reliance on *Cunningham* is unavailing because it is readily distinguishable from this case on the facts. Here, McClaine specifically testified that she felt that she could not leave the garage, and there is ample evidence that Kirby was substantially interfering with McClaine's liberty beyond battering her by physically restraining her and that Schocke was doing so by threatening her with a shotgun. We conclude that the State produced sufficient evidence to sustain Schocke's conviction for Level 3 felony criminal confinement.

[19] We affirm the judgment of the trial court.

Baker, J., and Pyle, J., concur.