

**FILED**

Aug 04 2015, 9:20 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Richard Ranucci
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dylan R. Smart,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 4, 2015

Court of Appeals Cause No.
29A02-1412-CR-887

Appeal from the Hamilton Superior
Court
Cause No. 29D05-1404-FD-3118

The Honorable Wayne A. Sturtevant,
Judge

**Barnes, Judge.**

## Case Summary

[1]     Dylan Smart appeals his convictions for Class D felony possession of
methamphetamine and Class D felony unlawful possession of a syringe.  We
affirm in part and reverse in part.

# Issues

Smart raises three issues, which we consolidate and restate as:

> I.  whether the trial court properly admitted the results of a field test into evidence; and
>
> II. whether the evidence is sufficient to sustain his convictions.

# Facts

On the evening of April 18, 2014, Smart, Janelle King, and Christina Perry drove around in a vehicle owned by Perry's husband. Perry did not have a driver's license, so King drove the vehicle. Smart was sitting in the front passenger seat. According to King, all three used narcotics in the vehicle that day. Everyone injected themselves with syringes filled with drugs provided by King. King threw her syringe away at a gas station.

In the early morning hours of April 19, 2014, Sergeant Mike Janes of the Fishers Police Department initiated a traffic stop of the vehicle, and a police canine alerted to the presence of drugs in the vehicle. During the traffic stop, Smart was "moving around excessively," he was not "able to hold still," and his eyes were "twitching . . . constantly." Tr. p. 108. During a search of the vehicle, officers discovered a spoon on the front passenger floorboard, a capped syringe on the floorboard behind the driver's seat, and a capped syringe in a backpack behind the driver's seat. Both syringes contained a brown fluid. King told an officer that there was a syringe in the vehicle and that the syringe belonged to "him." *Id.* at 92. Smart was the only male occupant of the vehicle.

[5] Smart denied that the backpack belonged to him, but he admitted to Sergeant Janes that he had used drugs by injecting them earlier in the vehicle. Smart had fresh "track marks" on his wrist. *Id.* at 126. Smart also admitted to Sergeant Janes that he had used "speed" by injecting it. *Id.* at 127. Speed is a street name for methamphetamine. Sergeant Janes later performed a field test on the fluid in one of the syringes, and it tested positive for either methamphetamine or MDMA, which is ecstasy.

[6] The State charged Smart with Class D felony possession of methamphetamine, Class D felony unlawful possession of a syringe, and Class D felony possession of a controlled substance. The controlled substance charge was later dismissed.

[7] At Smart's bench trial, Audra Yovanovich, a chemist for the Indiana State Police laboratory, testified that the laboratory was unable to analyze the substance in the syringes because the fluid was contaminated with blood or bodily fluids. Bodily fluids can damage the laboratory's instruments and degrade controlled substances, and the laboratory is not equipped to identify metabolites of controlled substances. When questioned regarding the field test performed by Sergeant Janes, Yovanovich testified that the field test is not confirmatory but gives a general idea of what kind of drug may be present in a sample. It is a "widely used test" but would "never be used alone to identify a controlled substance." *Id.* at 99.

[8] Smart later objected to Sergeant Janes's testimony regarding the results of the field test on the fluid found in one of the syringes. Smart argued that there was

not a proper foundation to use the field test, that Sergeant Janes was not an expert, and that the field test was not a "final test for narcotics." *Id.* at 121. The trial court overruled the objection and stated:

> The officer has testified how a test is conducted. The State Police witness testified that is a valid test, although not conclusive by itself and the Officer's testified that the - - if it turns blue, that's a positive result for methamphetamine or MDMA. Everything else goes to the weight of that testimony, will be assigned to me to make that determination, so the objection is overruled.

*Id.* Sergeant Janes then testified that the field test indicated a positive result for methamphetamine or MDMA.

At the trial, Smart testified that King had offered him "some speed, crystal" that was already loaded in a syringe. *Id.* at 143. Smart then testified that King had helped him inject it into his arm and that she kept the needle. Smart then admitted to using methamphetamine. Perry also testified and admitted to injecting methamphetamine provided by King.

The trial court found Smart guilty as charged and sentenced him to three years with one year suspended to probation. Smart now appeals.

# Analysis

## *I. Admission of Evidence*

Smart first argues that the trial court abused its discretion by admitting evidence of the field test results. We review the admission of evidence for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of

the facts and circumstances." *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001). The admission of evidence is harmless and is not grounds for reversal where the evidence is merely cumulative of other evidence properly admitted. *Gaines v. State*, 999 N.E.2d 999, 1005 (Ind. Ct. App. 2013).

[13] According to Smart, the trial court erred by admitting evidence of the field test results because the State failed to present a sufficient foundation for the scientific reliability of the field test. However, we need not address that argument because there was substantial evidence other than the field test result that the syringes contained methamphetamine. Most importantly, King, Perry, and Smart all admitted that they had injected methamphetamine earlier in the evening. Smart testified that King provided syringes already loaded with methamphetamine and that she helped him inject the methamphetamine into his arm. The positive field test result is merely cumulative of other evidence presented that the syringes contained methamphetamine. Any error in the admission of the field test result was harmless.

## II. Sufficiency of the Evidence

[14] Smart argues that the evidence is insufficient to sustain his convictions. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative

value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

### A. Possession of Methamphetamine

[15] Smart was found guilty of Class D felony possession of methamphetamine pursuant to Indiana Code Section 35-48-4.6-1(a), which at the time provided: "A person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses methamphetamine (pure or adulterated) commits possession of methamphetamine, a Class D felony."

[16] Smart argues that the evidence is insufficient to sustain his conviction because the State failed to prove the identity of the substance in the syringes. In support of his argument, Smart relies on *State v. Vorm*, 570 N.E.2d 109 (Ind. Ct. App. 1991). In *Vorm*, we addressed whether the presence of cocaine metabolites in urine was prima facie evidence of possession of cocaine. We held that, although "the presence of metabolites in urine may be viewed as circumstantial evidence of possession of cocaine," that circumstantial evidence, alone, did not constitute prima facie evidence of possession of cocaine. *Vorm*, 570 N.E.2d at 110. We rejected "both the State's contention the mere presence is prima facie evidence of prior possession and its contention presence in a person's bodily systems amounts to a knowledgeable possession of the substance." *Id.*

[17] We find *Vorm* distinguishable. Here, even if we do not consider the results of the field test, we conclude that the evidence is sufficient to show that Smart

possessed methamphetamine. Unlike in *Vorm*, Smart, King, and Perry all admitted to injecting methamphetamine on the evening in question. Smart had fresh track marks on his arm and was exhibiting symptoms of methamphetamine use. Our supreme court has recently held that "[t]he State is not required to introduce the subject contraband to obtain a conviction for dealing or possession." *Helton v. State*, 907 N.E.2d 1020, 1024 (Ind. 2009). "The identity and quantity of a controlled substance, and the defendant's possession of or dealing in narcotics, may all be established through witness testimony and circumstantial evidence." *Id.* Given the circumstantial evidence and the witness testimony here, we conclude that the evidence is sufficient to sustain Smart's conviction for Class D felony possession of methamphetamine.

## B. Unlawful Possession of a Syringe

[18] Next, Smart argues that the evidence is insufficient to sustain his conviction for Class D felony unlawful possession of a syringe. The offense is governed by Indiana Code Section 16-42-19-18, which at the time of the offense provided: "A person may not possess or have under control with intent to violate this chapter [the Legend Drug Act] a hypodermic syringe or needle or an instrument adapted for the use of a legend drug by injection in a human being."

[19] Smart argues that, pursuant to *Bookwalter v. State*, 22 N.E.3d 735 (Ind. Ct. App. 2014), *trans. denied*, the State was required to show that methamphetamine is a Legend Drug. In *Bookwalter*, which was handed down shortly after Smart's trial, the defendant was convicted of unlawful possession of a syringe and admitted that he possessed the syringes to inject himself with heroin. However,

he argued that heroin was not a legend drug and that there was insufficient evidence to show that he possessed the syringes with intent to violate the terms of the Legend Drug Act. This court held that the statute was ambiguous as to whether the possession of a syringe without a valid prescription for a legend drug, insulin, or anabolic steroids, with intent to inject a non-legend drug, was sufficient to violate Indiana Code Section 16-42-19-18. *Bookwalter*, 22 N.E.3d at 740-41. Consequently, under the rule of lenity, we construed the statute in favor of the defendant and concluded that intent to inject heroin was not covered by the Legend Drug Act's definition of the offense possession of a syringe.

[20] Following *Bookwalter*, the State was required to demonstrate that methamphetamine, which Smart admitted to injecting, was covered by the Legend Drug Act. Smart concedes that "methamphetamine hydrochloride" is a legend drug but argues that "methamphetamine" is not listed as a legend drug. According to Smart, the State failed to present any evidence that the methamphetamine that he admitted to injecting is the same substance as methamphetamine hydrochloride. The trial court took "judicial notice" that methamphetamine is a legend drug. Tr. p. 210. However, Indiana Evidence Rule 201(a) provides:

> The court may judicially notice:
> 1.    a fact that:
>     (A)    is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction, or

(B)     can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

2.     the existence of:

(A)     published regulations of governmental agencies;

(B)     ordinances of municipalities; or

(C)     records of a court of this state.

[21]     We cannot say that whether the methamphetamine injected by Smart qualifies as methamphetamine hydrochloride is a fact "not subject to reasonable dispute" or a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[1]  Evid. R. 201(a).  On appeal, without citing any authority, the State merely argues that "it is apparent that 'methamphetamine hydrochloride' is simply the formal name for the drug."  Appellee's Br. p. 15.  We simply cannot make that connection based on the evidence presented.  Consequently, we conclude that the State failed to present evidence that Smart possessed a syringe with the intent to violate the Legend Drug Act.  The evidence is not sufficient to sustain this conviction.

---

[1] We acknowledge our supreme court's opinion in *Reemer v. State*, 835 N.E.2d 1005 (Ind. 2005).  There, the State was required to show that the defendant possessed salts, isomers, or salts of isomers of ephedrine or pseudoephedrine in the context of a prosecution for possession of a precursor to methamphetamine.  The State proved that the defendant had possessed pseudoephedrine hydrochloride.  We reversed the defendant's conviction on appeal because the State had failed to demonstrate that pseudoephedrine hydrochloride was a salt, isomer, or salt of isomer of pseudoephedrine.  Our supreme court took notice of a medical dictionary definition that pseudoephedrine hydrochloride is "the naturally occurring isomer of ephedrine."  *Reemer*, 835 N.E.2d at 1010.  Consequently, our supreme court found that the evidence was sufficient to sustain the defendant's conviction for possession of a precursor to methamphetamine.  This case is distinguishable from *Reemer*.  Here, there was no evidence presented that the methamphetamine that Smart injected is the same as methamphetamine hydrochloride, and medical dictionary definitions are not helpful in resolving this issue.

# Conclusion

Any error in the admission of the field test results was harmless. We conclude that the evidence is sufficient to sustain Smart's conviction for Class D felony possession of methamphetamine, but the evidence is insufficient to sustain his conviction for Class D felony unlawful possession of a syringe. We affirm in part and reverse in part.

Affirmed in part and reversed in part.

Riley, J., and Bailey, J., concur.