## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.


FILED

May 24 2016, 9:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Scott P. Wyatt
Casandra J. Nelson
Campbell Kyle Proffitt, LLP
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Nicolas Webb,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 24, 2016

Court of Appeals Cause No.
29A02-1511-CR-1885

Appeal from the Hamilton Circuit Court

The Honorable Paul A. Felix, Judge

Trial Court Cause No.
29C01-1505-F4-4042

**Barnes, Judge.**

# Case Summary

Nicolas Webb appeals his convictions for Class A misdemeanor resisting law enforcement and Level 4 felony unlawful possession of a firearm by a serious violent felon. Webb also appeals his aggregate sentence of thirteen years. We affirm.

# Issues

Webb raises five issues, which we consolidate and restate as:

I. whether the trial court abused its discretion by denying Webb's request for a continuance;

II. whether the trial court abused its discretion by admitting testimony that, according to Webb, referenced his criminal history;

III. whether the trial court abused its discretion by excluding from evidence a probable cause affidavit from someone else's criminal prosecution; and

IV. whether Webb was properly sentenced.

# Facts

On May 6, 2015, around 7:00 p.m., Fishers Police Officer Greg Weesner was on duty, in uniform and driving a marked police unit while patrolling Interstate 69 in Hamilton County. Officer Weesner observed a blue Ford Taurus following the vehicle in front of it too closely and changing lanes without signaling. The driver of the Taurus was later identified as Shane Wilkins. Officer Weesner stopped the vehicle. Four people were riding in the Taurus, and Officer Weesner observed the rear backseat passenger, who was later

identified as Webb, looking out the back window and making "furtive movements leaning forward, things like that, towards the floorboard of the vehicle." Tr. p. 131.

[4] Officer Weesner approached the vehicle on the passenger side and asked the occupants to give him their identification. Webb and his wife, Samantha Jackson, who was also sitting in the backseat, did not have identification, so Officer Weesner asked them to write down their names. Webb identified himself as Christopher Webb. As Webb was handing Officer Weesner's notepad back to him with his right hand, Officer Weesner observed Webb placing a gun in Jackson's purse with his left hand. By the time Officer Weesner noticed the gun, additional officers had arrived. Officer Weesner pointed to Webb's location in the vehicle in order to indicate his concern about that passenger, and then he asked Webb to step out of the car. Webb got out of the car and ran. For the next four hours, officers from several law enforcement departments pursued Webb on foot. The Indianapolis Police Department provided a helicopter with a search light to aid the officers on the ground.

[5] While officers pursued Webb, Indiana State Police Trooper Nick Klingkammer and Fishers Police Officer Seth Goldstein searched the Taurus and observed a gun in an open purse in the passenger's side of the back seat. Officer Goldstein also found Webb's identification in the purse.

[6] Fishers Police Officer Kevin Silbaugh, who was present during the traffic stop, also chased Webb when he fled. During the chase, Officer Silbaugh saw Webb two more times but was unable to apprehend him.

[7] Fishers Police Officer Joseph Hancock also participated in the search for Webb. While driving north on Interstate 69, Officer Hancock observed Webb in some brush at the top of a hill and ran after him. Officer Hancock ordered Webb to stop, but Webb fled and ran toward the highway. Officer Hancock testified Webb was almost struck twice as he ran across Interstate 69. First, a semi came within five or ten feet of hitting Webb. "It was really close. The semi locked up its brakes when he ran across the interstate." *Id.* at 186. As Webb ran across the second set of interstate traffic lanes, he again came within about ten feet of being hit by the traffic. Noblesville Police Officer Brandon Brooks and his K-9 partner Jaball participated in the search for Webb and encountered him three times. Each time, Officer Brooks identified himself as a law enforcement officer, and Webb fled.

[8] Dustin Dixon is an officer and K-9 handler in the Hamilton County Sheriff's Department. He and his canine partner Debo also participated in the search for Webb. Debo tracked Webb, and, after some time, Officer Dixon and Debo were close enough to Webb that Officer Dixon ordered Webb to stop. Webb began "trying to crawl up the side of the creek to get out of the creek back into the wooded area." *Id.* at 245. Officer Dixon released Debo and ordered him to bite Webb. Webb "continued to crawl out of this creek bed . . . and he kind of kicked his leg and the dog came off . . . ." *Id.* at 246. Debo bit Webb again, "a

full mouth bite to hold on a little bit better," and Officer Dixon used Debo's lead to pull Webb back into the creek bed in an attempt to gain control of Webb. *Id.* When Officer Dixon pulled Debo and Webb down, Webb "put his hand down on the dog's head. I told him to get off the dog's head. At that point he put the dog's head under water in what I believe was an attempt to drown the dog to get the dog to come off the bite." *Id.* at 246-47. Officer Dixon instructed Webb to release Debo and, when he did not comply, struck Webb's face. Debo picked his head up out of the water and bit Webb on the arm. Officer Dixon was then able to arrest Webb.

[9] The State charged Webb with Level 4 felony possession of a firearm by a serious violent felon, Class A misdemeanor carrying a handgun without a license, and seven counts of Class A misdemeanor resisting law enforcement. During the final pretrial hearing, Webb requested a continuance so that he could depose two witnesses. The trial court denied his request.

[10] Webb's trial was bifurcated, and, in the first portion, a jury found him guilty of carrying a handgun without a license and six counts of resisting law enforcement. The trial court granted Webb's motion for a directed verdict as to one count of resisting law enforcement and dismissed that charge. In the second phase of the trial, a jury found Webb guilty of unlawful possession of a firearm by a serious violent felon. The trial court dismissed the charge for carrying a handgun without a license and merged the convictions for resisting law enforcement into one conviction for that crime—resisting Officer Weesner.

The trial court sentenced Webb to serve twelve years in the Department of Correction with two years suspended for his felony conviction and one year for his misdemeanor conviction. The trial court ordered Webb to serve his sentences consecutively for an aggregate sentence of thirteen years with two years suspended. Webb now appeals his convictions and sentence.

# Analysis

## I. Continuance

Webb first argues the trial court erred by denying his request for a continuance. "A defendant is statutorily entitled to a continuance where there is an absence of material evidence, absence of a material witness, or illness of the defendant, and the specially enumerated statutory criteria are satisfied." *Gibson v. State*, 43 N.E.3d 231, 236 (Ind. 2015) (citation omitted) (quotations omitted); *see also* Ind. Code § 35-36-7-1. Otherwise, "[c]ourts are generally reluctant to grant continuances in criminal cases merely to allow for additional preparation." *Id.* at 235-36. Here, Webb concedes the statutory criteria were not satisfied. *See* Appellant's Reply Br. p. 6. In that situation, "a trial court has wide discretion to deny a motion to continue." *Gibson*, 43 N.E.3d at 236. A trial court abuses its discretion only where a defendant was prejudiced because the trial court did not grant him or her a continuance. *Id.* "In order to show abuse of discretion the record must reveal that the trial court's ruling resulted in prejudice to the movant." *Salone v. State*, 652 N.E.2d 552, 558 (Ind. Ct. App. 1995), *trans. denied*; *see also Ross v. State*, 844 N.E.2d 537, 544 (Ind. Ct. App. 2006).

[13]     The following is the totality of the record related to Webb's request for a continuance.

> [DEFENSE]:     Judge, I think we are the fourth choice setting.  We were.
>
> THE COURT:     You're the only case left for trial next week.
>
> [DEFENSE]:     And I – I had filed, or at least indicated to the Court that I needed a continuance the last time to take some depositions.
>
> THE COURT:     Uh-huh.
>
> [DEFENSE]:     Those have not taken place.  My client is over at New Castle.  We haven't communicated to the degree that I would prefer that we communicate.  I don't think that I can be ready to go next Tuesday, and I would move for a continuance.  I would apologize to the Court, but this case was filed in May so it's not an old – old case.  I need some – I need time to take two depositions for sure.  One, I don't have the address; my client's got that back in New Castle with his papers.  So I can't – I can't expedite that till he gets back to New Castle.
>
> THE COURT:     At one point in time Mr. Webb had requested an early trial pursuant Criminal Rule 4.  … State?
>
> [THE STATE]:     Your Honor, given that it's better than the fifth choice, the State is prepared to proceed to trial and objects for – to a continuance.

THE COURT: I have the charges as unlawful possession of a firearm by a serious violent felon, carrying a handgun without a license, and resisting law enforcement; correct?

[THE STATE]: Yes, Your Honor.

THE COURT: I'm going to deny – deny your request to continue. We will proceed to trial next week.

Tr. Addendum pp. 4-5.

[14] Webb did not specify to the trial court who he needed to depose. On appeal, however, he states he requested the continuance in order to depose Officer Weesner and Shane Wilkins. He also argues that he was prejudiced by the trial court's denial of his request in a number of ways. The identity of the witnesses and those prejudice arguments, however, are not part of the trial record. Therefore, Webb failed to demonstrate before the trial court that any prejudice would result from the denial of his request for a continuance. Based on this sparse record, we conclude the trial court did not abuse its discretion when it denied Webb's request for a continuance.

## II. Testimony Related to Criminal History

[15] Webb contends the trial court abused its discretion when it overruled his objection to a question he argues revealed inadmissible information about his criminal history. We review the admission of evidence for an abuse of discretion. *Smart v. State*, 40 N.E.3d 963 966 (Ind. Ct. App. 2015). An abuse of discretion occurs where the decision is clearly against the logic and effect of the

facts and circumstances. *Id.* "Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error." *Darringer v. State*, 46 N.E.3d 464, 469 (Ind. Ct. App. 2015). "'The improper admission [of evidence] is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction.'" *Evans v. State*, 30 N.E.3d 769, 776 (Ind. Ct. App. 2015) (alteration in original) (quoting *Turner v. State*, 953 N.E.2d 1039, 1059 (Ind. 2011)), *trans. denied*.

[16]  At the outset of the trial, the trial court granted Webb's motion in limine and restricted the State from playing a portion of a phone call between Webb and Wilkins in which Webb asks Wilkins to testify on Webb's behalf and says, "Just come on my behalf like [Jackson] did in mother-f***ing Marion County for me. And that's how I came home last time on that in Marion County." Tr. p. 305. The purpose of Webb's motion in limine was to prevent the State from discussing Webb's criminal history. The trial court instructed the State to redact Webb's comment related to how he "came home" in "Marion County." *Id.*

[17]  During Wilkins's testimony, the State asked him, "And when you talked to the Defendant the last time, oh, the first time, did he indicate to you that he wanted you to help him like [Jackson] had helped him before?" *Id.* at 328. Wilkins answered, "No." *Id.* Webb objected to the question, but the trial court overruled his objection. On appeal, Webb contends the question "was a clear

reference to Webb having a prior criminal case" and that it deprived him of a fair trial because "any reference, however slight, of Webb having been in this situation 'before' could have easily swayed the minds of the jury in favor of conviction." Appellant's Amended Br. p. 17 (citation omitted in original).

[18] Assuming, arguendo, that the trial court abused its discretion by allowing the State to ask its question, that error was harmless. The State presented evidence that Officer Weesner observed Webb place a gun in purse located in the back seat of the car and that a gun was later recovered from a purse in the back seat of the car. The State also presented evidence that Webb identified himself with a false name and that he fled from the traffic stop and continued to flee from police for several hours. We conclude that independent evidence is more than enough to support Webb's convictions, and we are satisfied there is no substantial likelihood the question Webb challenges contributed to his conviction. *See Evans*, 30 N.E.3d at 776.

### III. Exclusion of Probable Cause Affidavit

[19] Webb next argues the trial court erred by not admitting into evidence the probable cause affidavit filed in Jackson's case. We review the admission of evidence for an abuse of discretion. *Smart v. State*, 40 N.E.3d 963, 966 (Ind. Ct. App. 2015). A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances. *Id.* "The admission of evidence is harmless and is not grounds for reversal where the evidence is merely cumulative of other evidence properly admitted." *Id.*

The State filed a motion in limine asking the trial court to restrict Webb from referencing "[a]ny evidence of the existence or outcome of *State of Indiana v. Samantha Jackson* . . . [because] [t]his evidence is irrelevant . . . [and] there is a substantial danger that such evidence will confuse the issues, mislead the jury, or be a needless waste of the Court's time." App. pp. 38-39. Webb sought to introduce Jackson's probable cause affidavit for the purpose of attacking Officer Weesner's credibility. Unlike the probable cause affidavit Weesner prepared in Webb's case, the probable cause affidavit he prepared in Jackson's case did not state that Officer Weesner observed Webb placing a handgun in Jackson's purse. During arguments on the State's motion in limine, Webb stated, "we think it's very relevant that the probable cause affidavit come in and, likewise, that the State obtained a conviction against Samantha Jackson for the very same thing that [Webb] is being tried for this morning." Tr. p. 8. Webb also noted that the State initially moved to have a joint trial for Jackson and Webb and argued that motion undercut the State's argument that the jury would be confused by seeing affidavits for probable cause from the two cases.

The trial court granted the State's motion in part and stated:

> I'm going to allow [Webb] to notify the jury that there was another case of Samantha Jackson and that she pled guilty to the charge of possession of a handgun, Carrying a Handgun Without a License I suppose is the charge she probably pled guilty to . . . I don't see that this PCA is going to come in because I do think that will confuse the jury, the PCA for Samantha Jackson has a different purpose than the PCA for Nicolas Webb and I do believe that it would be very confusing to the jury to see that and impossible for the State of Indiana to try to explain why one

sentence needs to be in the PCA for one defendant and does not need to be in the PCA for another. So I see that the prejudice is substantially, overly, substantially more prejudicial than it would be probative for I foresee myself sustaining an objection on 403 grounds.

*Id.* at 10.

[22]  Webb did not seek to introduce Jackson's probable cause affidavit during his trial. The subject did come up, however, during Officer Weesner's testimony when a juror seems to have asked a question about the probable cause affidavit in Jackson's case.[1]  *See id.* at 165-167. During a discussion about final jury instructions, Webb made an offer of proof related to Jackson's probable cause affidavit. He stated:

> [I]t seemed to me that I should make an offer to prove, and since I didn't have an exhibit that was denied, that wasn't done. But I have the exhibit, I indicated to you yesterday that I had it to publish to the jury. May I make the – may I ask to have the probable cause affidavit marked and make an offer to prove?

*Id.* at 226. The trial court allowed Webb to make his offer of proof and accepted the exhibit he tendered. *See id*. at 225-28.

[23]  "Rulings on motions in limine are not final decisions and, therefore, do not preserve errors for appeal." *Swaynie v. State*, 762 N.E.2d 112, 113 (Ind. 2002).

---

[1] That question was not read into the record or included in the record on appeal.

"The purpose of a motion in limine is merely to prevent prejudicial remarks from being made in the presence of the jury. To preserve error for appeal, the trial court must rule on the evidence during the trial." *Manning v. Allgood*, 412 N.E.2d 811, 817 (Ind. Ct. App. 1980) (cited with approval in *McCraney v. State*, 425 N.E.2d 151, 152 (Ind. 1981)).

[24] Although Webb ultimately made an offer of proof and tendered the exhibit, he failed to request relief from the State's motion in limine during the admission of evidence. *See Black v. State*, 829 N.E.2d 607, 610 (Ind. Ct. App. 2005), *trans. denied*. This would have allowed the trial court an opportunity to make a final ruling on the matter in the context in which Webb sought to admit the evidence. *See White v. State*, 687 N.E2d 178, 179 (Ind. 1997). Because Webb made no attempt to offer Jackson's probable cause affidavit into evidence, he has waived review of this issue. *See McCraney*, 425 N.E.2d at 152.

[25] Waiver notwithstanding, we briefly address Webb's contention that the trial court abused its discretion by not admitting Jackson's probable cause affidavit into evidence. Although the trial court granted the State's motion in limine with regard to Jackson's probable cause affidavit, Officer Weesner himself testified regarding the very information from that affidavit that Webb hoped to use to his advantage. *See* Tr. pp. 159-60. Officer Weesner testified that Jackson was convicted and sentenced to jail. *Id.* at 159. He testified that he drafted one case report related to both Webb and Jackson and that the report stated Officer Weesner observed Jackson place the gun in Jackson's purse. *Id.* at 159-60. Finally, Officer Weesner stated he prepared separate probable cause affidavits

in Jackson's and Webb's cases and that he did not include that observation in Jackson's probable cause affidavit. *Id.* at 160.

[26] Webb argues the trial court's refusal to admit Jackson's probable cause affidavit was not harmless error because that ruling affected his substantial rights. He contends, "Jackson's [probable cause affidavit] could have been the key piece of evidence the jury needed to find that Officer Weesner's statements about seeing Webb with a gun lacked credibility," and he notes that a juror asked a question about Jackson's probable cause affidavit. Appellant's Reply Br. p. 10. We note again that the record does not include the juror's question, and we are therefore unable to evaluate Webb's claim that the probable cause affidavit could have been a linchpin piece of evidence. The probable cause affidavit at issue here is merely cumulative of Officer Weesner's testimony. Waiver notwithstanding, we conclude any error in declining to admit that document was harmless.

## IV. *Sentencing*

[27] Webb contends both that the trial court abused its discretion when it sentenced him and that his sentence in inappropriate pursuant to Indiana Appellate Rule 7(B). We address each of his arguments.

[28] We engage in a four-step process when evaluating a sentence under the current "advisory" sentencing scheme. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *r'hg granted on other grounds*. First, the trial court must issue a sentencing statement that includes "reasonably detailed reasons or circumstances for imposing a particular sentence." *Id.* Second, the reasons or omission of reasons

given for choosing a sentence are reviewable on appeal for an abuse of discretion. *Id.* Third, the weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review. *Id.* Fourth, the merits of a particular sentence are reviewable on appeal for appropriateness under Indiana Appellate Rule 7(B). *Id.* Even if a trial court abuses its discretion by not issuing a reasonably detailed sentencing statement or in its findings or non-findings of aggravators and mitigators, we may choose to review the appropriateness of a sentence under Rule 7(B) instead of remanding to the trial court. *See Windhorst v. State*, 868 N.E.2d 504, 507 (Ind. 2007).

### A. Abuse of Discretion

[29] Webb asserts that the trial court abused its discretion by relying on aggravating factors that did not have support in the record or were improper as a matter of law. An abuse of discretion in identifying or not identifying aggravators and mitigators occurs if it is "'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Anglemyer*, 868 N.E.2d at 490 (quoting *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006)). Additionally, an abuse of discretion occurs if the record does not support the reasons given for imposing sentence, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. *Id.* at 490-91.

[30] Pursuant to Indiana Code Section 35-50-3-2, the maximum term of imprisonment for a Class A misdemeanor conviction is one year. Pursuant to

Indiana Code Section 35-50-2-5.5, the sentence for a Level 4 felony conviction is between two and twelve years. The trial court sentenced Webb to one year for his misdemeanor conviction and twelve years, with two years suspended to probation, for the Level 4 felony conviction.

[31] The trial court did not find any mitigating factors. The trial court found several aggravating factors. First, the trial court noted Webb's criminal and juvenile delinquency history, which began in 2006. "[S]ince September 1, 2006, you have almost every single year of your life been involved in one way or another with the criminal justice system . . . I don't know if there has been a single full calendar year where you were not being arrested or in jail or on probation." Tr. p. 449. The trial court also noted that, at the time of this offense, Webb was on pretrial release and charged with possession of a firearm by a serious violent felon. The trial court cited rule violations while Webb was incarcerated in the Department of Correction and detained in juvenile facilities and the fact he was suspended or expelled from school. It noted that Webb fathered a child but does not know the child's whereabouts. The trial court stated, "I see that you have a hard time being truthful with authority. Even to my probation officer you had a hard time letting her know that you are a gang member." *Id.* at 451. The trial court found "the particularized circumstances" of these crimes to be aggravating and stated, "you placed officers' lives and citizens' lives in danger. That you, from the evidence it appears that you were attempting to kill a K-9 police officer." *Id.* at 451. Finally, the trial court noted that the State's risk assessment determined Webb to be at high risk of reoffending.

[32] Webb argues the trial court abused its discretion by considering his conduct while fleeing as an aggravator because the record does not support it. According to Webb, "[n]o evidence was presented demonstrating that Webb was armed with a weapon, assaulted another person, or even threatened another person . . . no evidence was presented concerning any accidents [on the interstate] that occurred because of Webb's flight." Appellant's Amended Br. p. 22.

[33] There is ample evidence that Webb's prolonged flight, particularly his running across both the north- and southbound lanes of Interstate 69 with an officer in pursuit, created a dangerous situation for Officer Hancock and the citizens travelling the interstate at that time. Officer Hancock testified that two vehicles nearly struck Webb as he crossed the interstate and that a semi locked its brakes when it slowed to avoid hitting Webb. The likelihood of a serious traffic accident involving multiple cars travelling at high rates of speed as a result of Webb's reckless actions was very high. Webb further placed law enforcement officers and the public at risk by leading police on a four-hour chase. This evidence alone is sufficient to support this aggravator.

[34] Webb further argues the trial court abused its discretion by identifying as aggravating circumstances the fact Webb does not have contact with his child, has been affiliated with a gang, and, according to the risk assessment tool, is at high risk for reoffending. He also contends that the trial court abused its discretion by failing to articulate the rationale for imposing consecutive

sentences.[2] Because we conclude Webb's sentence is not inappropriate in light of the nature of the offense and character of the offender, we need not address the merits of these abuse of discretion arguments. Assuming, without concluding, that the trial court did abuse its discretion by finding these aggravators, we need not remand this matter for resentencing. *See Windhorst*, 868 N.E.2d at 507. Instead, we exercise our authority to review and revise Webb's sentence pursuant to Indiana Appellate Rule 7(B). *See id.*

### B. Appropriateness

[35] We now assess whether Webb's sentence is inappropriate under Appellate Rule 7(B) in light of his character and the nature of the offense. *See Anglemyer*, 868 N.E.2d at 491. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

---

[2] We note that Webb states the trial court "provided no further statement or explanation as to why the trial court was imposing a one-year sentence for the misdemeanor conviction . . . ." Appellant's Amended Br. p. 25. To the extent Webb suggests the trial court abused its discretion in this regard, we note that a trial court is only required to issue a sentencing statement "that includes a reasonably detailed recitation of the trial court's reasons for the sentence imposed" when imposing a sentence for a felony. *Anglemyer*, 868 N.E.2d at 484-85.

[36] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[37] With regard to the nature of the offense, we note that Webb's evasion of the police lasted approximately four hours and burdened officers from at least five law enforcement agencies. Webb led the officers on a chase through wooded, hilly terrain, where it was difficult to see, and it was likely an officer could have been injured while pursuing Webb. Webb endangered his own life, Officer Hancock's life, and the lives of innocent citizens when he ran across both the north- and southbound lanes of Interstate 69. This was an exceptionally dangerous act in light of the high rate of speed at which vehicles travel on the interstate and the number of them that could have been involved in a traffic

accident as a result of Webb's reckless behavior. In addition to endangering a large number of human lives, Webb attempted to injure, if not kill, K-9 Officer Debo when he tried to evade his apprehension in the creek.

[38] Webb is twenty-three years old and, as the trial court noted, has been involved in the juvenile delinquency and criminal justice systems since 2006. Webb's juvenile delinquency includes adjudications for Class A misdemeanor criminal mischief and conversion; and Class D felony theft, auto theft, and resisting law enforcement. In 2010, Webb was waived to adult court and convicted of Class B felony robbery. His adult criminal history includes convictions for two counts of Class B felony robbery. While serving the suspended portion of his sentence for those convictions, Webb's probation was revoked. He was also charged with Class 4 felony possession of a firearm by a serious violent felon, and he was on pretrial release at the time he committed this offense. In light of the nature of these offenses and Webb's character as a violent felon with a lengthy criminal history amassed in a short period of time, we conclude his aggregate thirteen-year sentence is not inappropriate in light of the nature of the offense and character of the offender.

## Conclusion

[39] We conclude the trial court did not abuse its discretion when it denied Webb's request for a continuance. We further conclude that any abuses of discretion in the admission or exclusion of evidence were harmless. Finally, we conclude Webb's aggregate thirteen-year sentence is not inappropriate. We affirm.

[40]     Affirmed.

[41]     Vaidik, C.J., and Mathias, J., concur.