# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 21 2017, 8:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tony W. Heroy,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 21, 2017

Court of Appeals Case No.
20A05-1607-CR-1572

Appeal from the Elkhart Superior Court

The Honorable Teresa L. Cataldo, Judge

Trial Court Cause No.
20D03-1407-FA-21

**Robb, Judge.**

## Case Summary and Issues

[1]　Following a jury trial, Tony Heroy was convicted of child molesting as a Class A felony and the trial court sentenced him to forty-five years executed in the Indiana Department of Correction. Heroy appeals his conviction and sentence, raising four issues for our review, which we consolidate and restate as: 1) whether the trial court abused its discretion in admitting evidence, 2) whether the evidence is sufficient to sustain his conviction, and 3) whether his sentence is inappropriate in light of the nature of the offense and his character. Concluding the trial court did not abuse its discretion in admitting evidence, the evidence is sufficient, and Heroy's sentence is not inappropriate, we affirm.

## Facts and Procedural History

[2]　In 2011, B.G. lived with her father, M.J., and step-mother, S.J., in Elkhart, Indiana. Heroy, B.G.'s step-uncle, also lived nearby. Over the next several years, B.G. often spent time at Heroy's residence to visit with family and also when Heroy babysat B.G.

[3]　In July 2014, then ten-year-old B.G. spent the night at C.R's home; C.R. is a member of B.G.'s extended family. B.G. explained to C.R. that Heroy had previously touched her several times in a sexual manner. C.R. informed S.J. of B.G.'s statements and S.J. contacted law enforcement.

[4]　On July 17, 2014, a child forensic interviewer from the Child and Family Advocacy Center interviewed B.G., which was video recorded. During the

interview, B.G. stated Heroy began touching her when she was approximately seven or eight years old and the touching occurred at two of Heroy's residences over the years. B.G. explained that, on at least one occasion, Heroy called her into his bedroom, positioned her on the bed, and pulled her pants and underwear down to her ankles. Using his hands, Heroy touched B.G.'s vagina, butt, and breasts, and also rubbed his penis on her butt and vagina. B.G. also explained that when she was nine years old, Heroy performed oral sex on her and she observed "white stuff" coming out of Heroy's penis. State's Exhibit 8 at 17:20-17:30. B.G. estimated the touching occurred several times over the years, and at times, Heroy gave B.G. money and asked her to keep it a secret.

[5]     On July 22, 2014, the State charged Heroy with child molesting as a Class A felony. In January 2016, Heroy wrote a letter to his wife from jail describing B.G. as a "little c*nt" and requesting his wife find a witness who could falsely claim B.G. admitted to lying about Heroy's acts. State's Ex. 7. The letter was accidentally sent to Heroy's brother and later given to law enforcement. On March 24, 2016, Heroy filed a motion in limine seeking to bar the State from admitting evidence of the letter at trial, which the trial court denied.

[6]     At trial, B.G. testified generally to the sexual encounters, but at times was unable to provide specific answers, citing an inability to remember. During a brief recess, the State attempted to refresh B.G.'s memory by having her view the recording of the interview. B.G. claimed the interview did not sufficiently refresh her recollection. The State then moved to admit the video recording of the interview into evidence, which the trial court granted over Heroy's

objection. The trial court also admitted the letter over Heroy's objection. A jury found Heroy guilty as charged and the trial court sentenced him to forty-five years executed in the Department of Correction. This appeal ensued. Additional facts will be added as necessary.

# Discussion and Decision

## I. Admission of Evidence

### A. Standard of Review

[7] The admissibility of evidence is within the sound discretion of the trial court. *Cherry v. State*, 971 N.E.2d 726, 730 (Ind. Ct. App. 2012), *trans. denied*. A trial court may abuse its discretion in admitting evidence if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.*

### B. The Letter

[8] Heroy contends the trial court abused its discretion in admitting the letter. Specifically, he claims the probative value of the letter is substantially outweighed by the danger of unfair prejudice and the letter's admission likely inflamed the passions of the jurors. We disagree.

[9] Indiana Rule of Evidence 401 states evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." However, a trial court maintains the discretion to exclude relevant evidence "if its probative

value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Ind. Evidence Rule 403. In criminal prosecutions, all relevant evidence is inherently prejudicial to a defendant. *Sanders v. State*, 840 N.E.2d 319, 323 (Ind. 2006). Therefore, to determine whether evidence is *unfairly* prejudicial, "courts should look for the dangers that the jury will substantially overestimate the value of the evidence or that the evidence will arouse or inflame the passions or sympathies of the jury." *Bell v. State*, 29 N.E.3d 137, 142 (Ind. Ct. App. 2015), *trans. denied*.

[10] In the letter, Heroy describes B.G. in a vulgar manner and requests his wife find a witness who could claim B.G. lied about Heroy's acts of molestation. Such evidence is relevant and highly probative as it indicates Heroy's consciousness of guilt and intent to discredit a child victim's testimony. Although we acknowledge the letter does have some prejudicial impact and the potential to arouse or inflame the passions of the jury, we cannot say the admission of the letter was *unfairly* prejudicial. We conclude the trial court did not abuse its discretion in admitting the letter.

## C. The Interview

[11] Heroy contends the trial court abused its discretion in admitting a video recording of the interview. Specifically, he claims the interview constitutes inadmissible hearsay and further argues its admission violated his right to confront B.G. The State counters the admission of the interview falls within the

recorded recollection exception to the hearsay rule and Heroy's confrontation rights were not infringed upon because he had an opportunity to face B.G. and cross-examine her at trial. We agree with the State as to both issues and find no error in the admission of the interview.

### 1. Recorded Recollection

Heroy first contends the interview is inadmissible hearsay. "Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted." *Coleman v. State*, 946 N.E.2d 1160, 1168 (Ind. 2011) (citing Ind. Evidence Rule 801(c)). Hearsay can be admissible, however, if it falls within one of the exceptions delineated in Indiana Evidence Rule 803. Evid. R. 802. Here, the parties acknowledge the interview constitutes hearsay but dispute whether the interview was properly admitted under the recorded recollection exception, which provides that a record may be admitted into evidence if the record: "(A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory, and (C) accurately reflects the witness's knowledge." Evid. R. 803(5). Specifically, it appears Heroy only challenges the first prong, arguing B.G.'s "memory as displayed during her testimony should not have been considered so insufficient to warrant application of the recorded recollection hearsay exception." Appellant's Brief at 13.

At trial, B.G. testified generally as to how Heroy touched her vagina with his penis and mouth. However, B.G. was unable to answer some questions due to

her inability to remember certain details of the sexual encounters and acknowledged having a better memory during the interview. B.G. was then excused from the stand, and during a brief recess, B.G. viewed the interview. Following the recess, the State recalled B.G. to the stand. B.G. then acknowledged she struggled to answer the State's questions in her previous testimony due to her memory, and although reviewing the interview helped her remember some details, she felt the interview adequately described details of the events she still could not remember. She further explained her statements during the interview were truthful. The State then moved to admit a redacted portion of the interview, which the trial court allowed over Heroy's objection.

[14] We conclude the interview was properly admitted under the recorded recollection exception to the hearsay rule. B.G. clearly could not recall some specific details of Heroy's acts. During the interview and at trial, B.G. noted the statements she made in the interview were truthful. In addition, she acknowledged the interview provided a level of detail she could not fully provide at the time of trial. We further note her testimony pertaining to the events she could recall at the time of trial were consistent with the statements she made during the interview. We conclude the interview pertained to a matter B.G. once knew about but could not remember well enough to accurately and fully recall at trial. *See Horton v. State*, 936 N.E.2d 1277, 1283 (Ind. Ct. App. 2010) (finding the admission of a videotaped interview under the recorded recollection exception to the hearsay rule was proper in light of the fact the child victim could not recall "some specific details" during live

testimony, the victim's statements at trial were consistent with the statements made during the interview, and the victim timely adopted the statements made during the interview as accurate), *summarily aff'd on this ground*, 949 N.E.2d 346 (Ind. 2011).

## 2. Confrontation Clause

Heroy also contends the admission of the interview into evidence violated the Confrontation Clauses of the United States and Indiana Constitutions. Specifically, he claims the vast majority of evidence showing his culpability stemmed from the admission of the interview, and because the interview occurred nearly a year and one-half prior to trial, he was deprived of a genuine opportunity to cross-examine B.G. We disagree.

The Sixth Amendment to the United States Constitution guarantees that, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." Similarly, Article 1, Section 13 of the Indiana Constitution guarantees that, "In all criminal prosecutions, the accused shall have the right . . . to meet the witnesses face to face . . . ." However, in the event a declarant is unable to recall certain events during live testimony, the Confrontation Clause is satisfied as long as the declarant is available for cross-examination. *Fowler v. State*, 829 N.E.2d 459, 464 (Ind. 2005), *cert. denied*, 547 U.S. 1193 (2006). Stated differently, "if the declarant 'appears for cross-examination at trial,'—sometimes treated as equivalent to 'available'—the opportunity for cross-examination on the witness stand is sufficient for purposes of the Confrontation Clause." *Id.* Here, B.G. testified at trial, Heroy had an

opportunity to face B.G., and B.G. was subject to cross-examination before and after the interview was admitted into evidence. Heroy's argument fails.

## II. Sufficiency of the Evidence

### A. Standard of Review

[17] When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh the evidence nor judge witness credibility. *Smart v. State*, 40 N.E.3d 963, 966 (Ind. Ct. App. 2015). Rather, we consider only the evidence supporting the judgment and any reasonable inferences arising from such evidence. *Id.* We will affirm a conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind.2007) (citation omitted).

### B. Child Molesting

[18] Heroy contends the evidence is insufficient to support his conviction for child molesting. To prove Heroy committed child molesting as a Class A felony as charged, the State was required to prove Heroy, being a person of at least twenty-one years of age, performed or submitted to sexual intercourse or deviate sexual conduct with B.G., a child under the age of fourteen. Ind. Code § 35-42-4-3(a) (2007). "'Deviate sexual conduct' means an act involving: (1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." Ind. Code § 35-31.5-2-94 (2012).

[19] At the outset, we note B.G.'s testimony establishes Heroy performed deviate sexual conduct when he performed oral sex on her and the uncorroborated testimony of a victim or eyewitness is sufficient to sustain a conviction. *See Hubbard v. State*, 719 N.E.2d 1219, 1220 (Ind. 1999). Heroy acknowledges this point, *see* Appellant's Br. at 26, but contends the doctrine of incredible dubiosity dictates his conviction cannot stand. The incredible dubiosity rule allows a reviewing court to "impinge on the jury's responsibility to judge the credibility of the witnesses only when it has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony . . . ." *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015) (citations and internal quotation marks omitted). In other words, "Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). In *Moore*, our supreme court described the appropriate scope of the rule, which requires: "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." 27 N.E.3d at 756. If all three factors are not present, application of the incredible dubiosity rule is precluded. *Id.* at 758.

[20] Here, we note Heroy does not point to any portion of the record showing B.G.'s testimony was inherently contradictory, equivocal, or the result of coercion. Instead, Heroy claims B.G., during the interview and at trial, was unable to confidently say when the acts of molestation occurred. What Heroy

fails to acknowledge, however, is the fact he molested B.G., a young child, on several occasions over an extended period of time. In light of these circumstances, B.G.'s inability to consistently and specifically identify when the acts occurred does not make her testimony incredibly dubious. We decline Heroy's request to apply the doctrine of incredible dubiosity and conclude the State presented sufficient evidence to sustain Heroy's conviction for child molesting as a Class A felony.

## III. Inappropriateness of Sentence

Indiana Appellate Rule 7(B) provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading this court his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review is to "leaven the outliers," not achieve the perceived "correct" result in each case. *Id*. at 1225.

The advisory sentence is the starting point the legislature selected as an appropriate sentence for the crime committed. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). Here, Heroy

was convicted of child molesting as a Class A felony. A person convicted of a Class A felony shall be imprisoned for a fixed term of between twenty and fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4(a). The trial court sentenced Heroy to forty-five years executed in the Department of Correction.

[23] As to the nature of the offense, we note Heroy took advantage of B.G. several times over an extended period of time, all while he was in a position of trust, care, and authority over her. In addition, Heroy gave B.G. money after several sexual encounters and requested she keep the encounters a secret. As to Heroy's character, we note he attempted to avoid responsibility for his conduct by requesting his wife find a witness who would falsely claim B.G. fabricated the acts of molestation. Also in the letter, Heroy described B.G., his niece, as a "little c*nt." State's Ex. 7. Although these prior two points speak greatly to Heroy's character, we further note Heroy has been convicted of at least three prior crimes, including child abuse, and has violated probation on two occasions. We conclude Heroy's sentence is not inappropriate in light of the nature of the offense and his character.

# Conclusion

[24] We conclude the trial court did not abuse its discretion in admitting evidence, the evidence is sufficient to sustain Heroy's conviction, and Heroy's sentence is not inappropriate. Accordingly, we affirm.

Affirmed.

Kirsch, J., and Barnes, J., concur.