FILED
Aug 08 2018, 10:10 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Jay A. Rigdon | Curtis T. Hill, Jr. |
| Rockhill Pinnick LLP | Attorney General |
| Warsaw, Indiana | |
| | Caryn N. Szyper |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tavis Ray Crittendon, | August 8, 2018 |
| *Appellant-Defendant,* | Court of Appeals Case No. 18A-CR-206 |
| v. | Appeal from the Kosciusko Circuit Court |
| State of Indiana, | The Honorable Michael W. Reed, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 43C01-1601-F6-61 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Following a heroin overdose, the State charged Tavis Ray Crittendon with Level 6 felony possession of a narcotic drug. Following a bench trial, the trial judge found him guilty, reasoning that Crittendon admitted using heroin and

had to possess the heroin in order to use it. Crittendon now appeals, arguing that he cannot be convicted of possessing the heroin he admitted consuming. Because this Court has already determined that a defendant can be found guilty of possessing the drug that was consumed (without the State having to introduce the drug into evidence), we affirm.

# Facts and Procedural History

[2] In the early-morning hours of January 25, 2016, Acacia Frye called 911 when she found Crittendon, her live-in boyfriend, unresponsive with blue lips. Acacia "immediately recognize[d] it as a [h]eroin overdose" and started administering CPR. Tr. p. 36.

[3] When Deputy Christopher Francis with the Kosciusko County Sheriff's Department arrived at the Warsaw house, medics were working on Crittendon. Crittendon, who appeared "heavily impaired," was talking to the medics. *Id.* at 14. As the medics transported Crittendon to the hospital, Deputy Francis spoke with Acacia because he wanted "to figure out exactly what [Crittendon] was on for his well-being." *Id.* at 13-14. Acacia told him that there were narcotics in the house. Acacia then led Deputy Francis to a bedroom in the attic and lifted the mattress, revealing plastic baggies, a syringe, and a marijuana pipe. A powder in one of the bags field-tested positive for heroin. Acacia said she purchased the heroin the day before in South Bend. *Id.* at 33.

[4] Meanwhile, another deputy went to the hospital to speak with Crittendon. The interview was recorded. Crittendon told the deputy that he didn't know about the items under the mattress. When the deputy asked Crittendon what happened, he said:

> I, uh, slipped up. Did some, well what I thought was a little bit of coke, some heroin. Went to sleep. Woke up to the ambulance being there and my girlfriend freaking out.

Ex. 1.[1] He told the deputy that he used the cocaine and heroin with an old friend at a gas station in Milford, a nearby town in Kosciusko County.

[5] The State charged Crittendon with Level 6 felony possession of a narcotic drug.[2] Crittendon filed a written waiver of his right to a jury trial (which was signed by both him and his attorney), *see* Appellant's App. Vol. II pp. 22-23, and a bench trial was held.

[6] At the bench trial, the State's theory was that Crittendon possessed the heroin found under the mattress. Defense counsel's theory was that Crittendon did not possess the heroin found under the mattress, that he used a different batch of heroin belonging to a friend, and that a person cannot be convicted of

---

[1] Crittendon argues that the evidence is insufficient to prove that the drug he consumed was in fact heroin because he said during the interview that he "thought it was heroin." Appellant's Br. p. 18. As this passage reveals, Crittendon admitted that he used "what [he] thought was a little bit of coke" and "some heroin." Thus, Crittendon expressed uncertainty to the cocaine, not the heroin.

[2] The State also charged Crittendon with Level 6 felony possession of a syringe, but the court found him not guilty of that charge.

possessing a drug they consumed. The trial judge was not persuaded by defense counsel's argument, finding that because Crittendon admitted to using heroin and that "[h]e had to possess it to consume it," he was guilty of Level 6 felony possession of a narcotic drug. Tr. pp. 45, 47.

[7] Crittendon now appeals.

# Discussion and Decision

[8] Crittendon contends that he cannot be convicted of possessing the heroin he admitted consuming. Crittendon concedes that "[c]ase law does exist to equate consumption with possession"—that is, an Indiana Court of Appeals decision from 1974, *Smith v. State*, 161 Ind. App. 636, 316 N.E.2d 841 (1974), *reh'g denied*—but he claims that *Smith* is "no longer good law" because "it has not been cited in any subsequent appellate cases." Appellant's Br. p. 11.

[9] Not so. This Court relied on *Smith* in 1991 in *State v. Vorm*, 570 N.E.2d 109 (Ind. Ct. App. 1991). In *Vorm*, the defendant tested positive for cocaine metabolites during a drug screen while he was on work release and was charged with possession of cocaine. We said:

> Although we have not previously addressed the precise question at hand, whether the presence of cocaine metabolites in urine is prima facie evidence of possession of cocaine, our Third District, J. Garrard, stated in *Smith v. State* (1974), 161 Ind. App. 636, 316 N.E.2d 841, 842, *reh. denied*:

> Also, although we find no Indiana decisions specifically on point, it has been held that evidence showing a person has a prohibited drug within his system is circumstantial evidence tending to show he was in possession of the drug prior to taking it. (Citation omitted).

*Vorm*, 570 N.E.2d at 110. We held that evidence that a person has cocaine metabolites in their system is circumstantial evidence of prior possession of cocaine but that additional evidence is needed. *Id.* at 110-11. In other words, the presence of cocaine metabolites in a person's system, by itself, is not enough to support a conviction for possession of cocaine. Because there was no evidence showing that Vorm knowingly or intentionally possessed cocaine, we reversed his conviction.

[10] We revisited the issue in 2015 in *Smart v. State*, 40 N.E.3d 963 (Ind. Ct. App. 2015), *reh'g denied*. In *Smart*, a car containing three people—Dylan Smart, Janelle King, and Christina Perry—was pulled over. Smart was in the front passenger seat, and Janelle was the driver. During the traffic stop, Smart moved around excessively and had constantly twitching eyes. Janelle told the officer that there was a syringe in the car and that it belonged to Smart. The officer then found two syringes behind the driver's seat, one on the floorboard and the other in a backpack. Both syringes contained a brown fluid; a field test on one of the syringes was positive for methamphetamine or ecstasy. Smart denied that the backpack was his, but he admitted using "speed" (a street name for methamphetamine) by injecting it and that he had done so in the car. Smart had fresh "track marks" on his wrist.

[11]     The State charged Smart with, among other things, Class D felony possession of methamphetamine.  At trial, Smart testified that Janelle had offered him "some speed" that was already loaded into a syringe and that Janelle helped him inject it and then kept the syringe.  Smart then admitted using meth.  Christina also testified, and she admitted injecting the meth supplied by Janelle.

[12]     On appeal, Smart, relying on *Vorm*, argued that the evidence was insufficient to support his conviction for possessing meth.  We held:

> We find *Vorm* distinguishable.  Here, even if we do not consider the results of the field test, we conclude that the evidence is sufficient to show that Smart possessed methamphetamine.  Unlike in *Vorm,* Smart, King, and Perry all admitted to injecting methamphetamine on the evening in question.  Smart had fresh track marks on his arm and was exhibiting symptoms of methamphetamine use.  Our supreme court has recently held that "[t]he State is not required to introduce the subject contraband to obtain a conviction for dealing or possession." *Helton v. State,* 907 N.E.2d 1020, 1024 (Ind. 2009).  "The identity and quantity of a controlled substance, and the defendant's possession of or dealing in narcotics, may all be established through witness testimony and circumstantial evidence." *Id.*  Given the circumstantial evidence and the witness testimony here, we conclude that the evidence is sufficient to sustain Smart's conviction for Class D felony possession of methamphetamine.

*Id.* at 967.

[13]     Critically, Crittendon does not acknowledge either *Vorm* or *Smart* in his appellant's brief.  The State cites *Smart* in its appellee's brief, and Crittendon did

not file a reply brief. Based on both *Vorm* and *Smart*, we find that the evidence is sufficient to support Crittendon's conviction for possession of a narcotic drug. That is, Crittendon admitted using heroin shortly before waking up to medics, and he showed clear signs of a heroin overdose. Although Crittendon argues that there is a "public policy argument to be made against equating consumption . . . with possession" because it discourages people from seeking medical assistance, public-policy arguments should be made to the General Assembly. We therefore affirm Crittendon's conviction for Level 6 felony possession of a narcotic drug.[3]

Affirmed.

Riley, J., and Kirsch, J., concur.

---

[3] Crittendon also argues that there was a "fatal variance" between the charging information, which, "when read in conjunction with the Affidavit of Probable Cause, clearly references the heroin found in the bedroom," and the judge's actual finding that Crittendon "possessed heroin at a gas station in Milford." Appellant's Br. pp. 12-13. Crittendon, however, did not make a fatal-variance claim either before or after the judge announced he was finding Crittendon guilty and has therefore waived this issue. *See Neff v. State*, 915 N.E.2d 1026, 1031 (Ind. Ct. App. 2009) ("As a general rule, failure to make a specific objection at trial waives any material variance issue."), *aff'd on reh'g*, 922 N.E.2d 44 (Ind. Ct. App. 2010), *trans. denied*.

Finally, Crittendon argues that he did not validly waive his right to a jury trial. He acknowledges the Indiana Supreme Court's decision in *Kellems v. State*, 849 N.E.2d 1110 (Ind. 2006), which holds that a waiver of the right to a jury trial can be done either in writing or in open court, but asks us to "overrule" it and "formulate a black-line rule" that such a waiver can only be done in open court. Appellant's Br. p. 18. We cannot do so. *See Gill v. Gill*, 72 N.E.3d 945, 949 (Ind. Ct. App. 2017) (explaining that it is not the role of the Indiana Court of Appeals to reconsider or declare invalid decisions of the Indiana Supreme Court), *trans. denied*.